OPINION
Defendant-appellant, Regina Bowling, appeals from a Butler County Court of Common Pleas, Juvenile Division, decision granting permanent custody of her two minor children to the Butler County Children Services Board (BCCSB) and divesting appellant of her parental rights. We affirm.
Appellant has three children, Melinda Fraley, age fourteen, Clyde Bowling, age six, and Gary Bowling, Jr., age five. Gary Bowling, Sr. is the father of Clyde and Gary, Jr. In 1992, Gary Bowling, Sr. was convicted of sexually assaulting Melinda. As a result, Gary Bowling, Sr. was incarcerated and legal custody of Melinda was given to appellant's brother, David Fraley, and his fiance, Donna Naegle.
On June 28, 1995 the BCCSB received a referral from Hamilton County Human Services regarding Clyde and Gary Jr. There were reports that appellant abused and neglected her sons and BCCSB investigated. On November 8, 1995, Mindy Toms, a BCCSB caseworker, visited appellant's home and discovered that appellant was heating her apartment by turning on the stove and opening the oven door. Toms arranged for appellant to obtain emergency heating, but appellant failed to follow through with the request and never obtained heat for the apartment. Toms discovered that the children suffered from poor hygiene, were rarely bathed, smelled of urine, were sent to school in the same clothes for days in a row and were wet with urine, and were often without socks and/or underwear. Clyde had a persistent problem with head lice and appellant failed consistently to give Clyde his needed medication and failed to keep his doctor appointments. Further, Clyde exhibited signs of physical abuse.
On June 24, 1996, BCCSB filed a complaint against appellant alleging neglect and dependency of Clyde Bowling, and neglect, abuse, and dependency of Gary Bowling, Jr. BCCSB removed Clyde and Gary, Jr. from appellant's custody and placed them in foster care. Gary Bowling, Sr. was notified through publication, but he has never participated in any proceedings concerning his children.
On July 1, 1996, the juvenile court held a shelter care hearing in which temporary custody of Clyde and Gary, Jr. was granted to BCCSB. The juvenile court granted appellant at least one hour of visitation with the boys, and prohibited any contact by the father. Fraley and Naegle requested that the boys be placed with them, so the juvenile court ordered that a home study be completed.
On September 25, 1996, the juvenile court held an adjudication hearing and found that both Clyde and Gary, Jr. were dependent and neglected. The juvenile court proceeded to a disposition hearing. A case plan was designed which required appellant to participate in comprehensive drug and alcohol assessments, and parenting and living skills programs. However, appellant failed to attend most sessions and failed to apply any of the lessons. In addition, appellant was required to undergo psychiatric evaluation and to continue her visitation with Clyde and Gary Jr. The psychiatric evaluation showed that appellant made little progress toward reuniting herself with her sons and showed that appellant lacked the ability to take care of herself.
On July 8, 1997, BCCSB filed a motion to obtain permanent custody of Clyde and Gary Jr. On February 2, 9, and 10, 1998, the juvenile court held a hearing to determine BCCSB's permanent custody motion. Expert testimony established that appellant is mildly mentally retarded, suffers from hallucinations, experiences suicidal ideation, and is unable to read. Further, experts opined that appellant is incapable of taking care of herself and is unable to parent the children.
A home study was attempted with respect to Fraley and Naegle, but they refused to comply with BCCSB's request to participate in any programs, including an alcohol dependency assessment. In addition, Fraley and Naegle already have permanent custody of Melinda, appellant's other child, but she lives with appellant's sister. At the hearing, evidence was presented that Melinda had sexually abused the boys. However, none of the parties have sought help concerning these accusations and there has been no attempt to prevent contact between Melinda and the boys.
On February 25, 1998, the juvenile court held that appellant is incapable of parenting and the boys could not be placed with appellant within a reasonable time. In addition, the juvenile court addressed Fraley's and Naegle's lack of concern about the boys' sexual abuse allegations and the fact they have allowed Melinda to live with someone else. Based on these observations, the juvenile court held that the environment Fraley and Naegle would provide is not in the boys' best interest. The juvenile court further found that the boys' emotional and physical conditions had greatly improved while in foster care and would continue to improve. Therefore, the juvenile court held that the boys' best interest would be served by granting permanent custody to BCCSB.
Appellant has failed to submit in her brief, as required by App.R. 16, a table of contents, table of cases, or a statement of assignments of error and issues for review. Despite this total disregard for the appellate rules, this court will recognize appellant's argument as an assignment of error and hear this appeal. Appellant asserts that the juvenile court's decision to grant custody to BCCSB is not supported by clear and convincing evidence. We disagree.
A juvenile court may grant permanent custody to an agency if the court finds by clear and convincing evidence that the best interest of the child warrants a grant of permanent custody, and that the child cannot be placed with either parent within a reasonable time. In re Egbert Children (1994), 99 Ohio App.3d 492,495. Clear and convincing evidence is established when there is evidence to support a firm belief or conviction that a particular fact has been established or proved. In the Matter of Gipson (Sept. 30, 1997), Hardin App. No. 6-97-12, unreported, citing Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In determining the best interest of the child, R.C. 2151.414
(D) provides that the juvenile court must consider all relevant factors including the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child. (2) The wishes of the child * * * (3) The custodial history of the child. (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
In the present case, the juvenile court considered the interaction between appellant and her sons and found that Gary, Jr. has a close bond with appellant. However, appellant consistently ignored Clyde during her visits. As a result, appellant has isolated Clyde and has failed to maintain a parent-child relationship with her son. The juvenile court addressed the boys need for permanent placement and found that appellant has exhibited an inability to provide a clean and nurturing home for the boys. The record is replete with facts that illustrate that appellant cannot take care of her sons on a physical or an emotional level. Therefore, it was clear to the juvenile court that the boys should not be placed with appellant.
The juvenile court also considered the boys' relationship with Fraley and Naegle to be a positive benefit. However, both Fraley and Naegle have refused to take part in the BCCSB's alcohol and drug assessments. In addition, although Fraley and Naegle have legal custody of Clyde and Gary Jr.'s half-sister, Melinda, they have allowed Melinda to live elsewhere. This lack of commitment to Melinda suggests the possibility that Fraley and Naegle may do the same thing with the boys. More importantly, there have been allegations by the boys that Melinda has sexually assaulted them. Neither Fraley nor Naegle has exhibited support for the boys' accusations, addressed the validity of their claims, nor sought help for any of the children concerning this issue. Therefore, the juvenile court's determination that placing the boys with Fraley and Naegle is not in the boys' best interest is supported by clear and convincing evidence.
Reports from BCCSB show that the boys have exhibited marked positive changes in their behavior and personal hygiene since they have been placed in foster care. The boys have expressed a desire not to see their mother and BCCSB is hopeful that the boys will be adopted. In addition, the juvenile court addressed the custodial history of the boys, noting that the boys have been placed together in a foster home. As a result, the boys' placement into foster care has been beneficial.
Whether appellant is incapable through no fault of her own or is unwilling to provide for Clyde and Gary, Jr., it is clear that her lack of participation in the living and parenting skills workshops would cause the boys' physical and emotional health to suffer severely. After considering the evidence about appellant's inability to parent, Fraley's and Naegle's lack of support for the boys, and the boys' improvements in foster care, the evidence clearly supports the juvenile court's finding that no secure placement could be found other than granting permanent custody to BCCSB.
In addition to their best interest, the juvenile court is required to assess whether the boys can be placed with appellant within a reasonable time or not at all. In making its determination, the juvenile court is guided by a variety of factors. The relevant part of R.C. 2151.414(E) states:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse, or physical, emotional, or mental neglect. (Emphasis added.)
The record is clear that appellant was offered services to improve her basic living and parenting skills. However, appellant failed to retain any lesson she was taught and failed to even attend the skills workshop. This lack of effort demonstrates that she "has failed continuously and repeatedly to substantially remedy the conditions" that gave rise to the removal of Clyde and Gary, Jr. from her custody. Further, there was expert testimony that stated that appellant is unwilling or is unable to provide the basic necessities for her sons and her unchanged conduct will be detrimental to the boys' physical and mental well-being. Therefore, the record supports the juvenile court's decision that appellant does not have the capacity to parent her children.
Therefore, we find that the juvenile court properly determined that it was in the best interest of Clyde and Gary, Jr. to grant permanent custody to BCCSB. We further conclude that the juvenile court's decision to grant permanent custody to BCCSB was supported by clear and convincing evidence. Accordingly, appellant's assignment of error is not well-taken and the judgment of the juvenile court is affirmed.
KOEHLER and WALSH, JJ., concur.